**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-2767-WJM-STV

UNITED FOOD AND COMMERCIAL WORKERS
INTERNATIONAL UNION, LOCAL 7, AFL-CIO,

      Plaintiff,

v.

KAISER FOUNDATION HEALTH PLAN OF COLORADO, and
COLORADO PERMANENTE MEDICAL GROUP P.C.,

      Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

---

This matter is before the Court on Defendants Kaiser Foundation Health Plan of Colorado and Colorado Permanente Medical Group, P.C.'s (collectively, "Kaiser") Motion to Dismiss or Motion to Stay ("Motion"). (ECF No. 38.) Plaintiff United Food and Commercial Workers International Union, Local 7, AFL-CIO ("Local 7") filed a response ("Response") (ECF No. 41), to which Kaiser replied (ECF No. 42). For the following reasons, the Motion is denied.

## I. BACKGROUND

Local 7 and Kaiser are part of a larger, multi-union labor-management partnership known as the Alliance of Health Care Unions which negotiates a "National Agreement" with Kaiser's national leadership setting certain minimum standards covering all member unions. (ECF No. 32 ¶ 14(a).) Local 7 and Kaiser negotiate local collective bargaining agreements within the framework of the "National Agreement."

(*Id*.)  There are two local CBAs at issue here: (1) a CBA which covers a "Multi-Professional Unit," consisting of a wide variety of medical staff categories including registered nurses, advanced practice nurses, physician assistants, and other job categories, which was in effect from September 24, 2018 to April 2, 2022 ("MPU CBA") (*id*. ¶ 14(b)) and (2) a CBA covering behavioral health professionals, such as licensed social workers and psychologists, which was in effect October 1, 2018 to May 31, 2022 ("BHP CBA") (*id*. ¶ 14(c)).  The provisions of the MPU CBA and the BHP CBA (jointly, the "CBAs") at issue in this action are the same.  Moreover, the parties agreed to new CBAs that are effective through the spring of 2026 and which retain the provisions relevant to this dispute.  (*Id*. ¶ 14(b)–(c).)

In its Amended Complaint, Local 7 alleges that Kaiser breached the Patient Care Clause of the CBAs.  (*Id*. at ¶¶ 49–53.)  The Patient Care Clause reads, in relevant part:

> The parties recognize their mutual and ethical responsibility to provide sufficient staffing to meet quality standards of patient care, workload, and other issues affecting patient care, including, but not limited to, assuring adequate coverage, sick replacement, overtime, and to assure that no employee is required to work in any situation in which his or her license is threatened or places any employee or patient in danger.
>
> To that end, Kaiser shall provide sufficient staffing to address quality standards of patient care and provider workload including safe coverage.

(ECF No. 31-4 at 48 (MPU CBA); ECF No. 31-6 at 30 (BHP CBA).)

Local 7 alleges that Kaiser has failed to provide sufficient staffing for multiple departments leading to many patients being placed at significant medical risk, and that as a result, many bargaining unit medical staff believe themselves to be at risk of losing their professional licenses.  (ECF No. 32 ¶¶ 34, 43.)  Specifically, Local 7 alleges that

since at least October 2019, Kaiser's Message Management Department has been so understaffed that "many inbound messages from patients are not responded to, *or even reviewed*, until days or weeks—and sometimes *months*—after receipt." (*Id*. ¶ 2 (emphasis in original).)  Local 7 alleges that understaffing has resulted in a significant backlog in messages, which at one point may have reached as high as 94,000 messages that were awaiting a response. (*Id*. ¶ 34.)  Further, Local 7 alleges that the lengthy delays in responding to patients represent an "extreme risk to patient safety." (*Id*.)

Additionally, Local 7 alleges that Kaiser has failed to adequately staff departments that provide hands-on patient care, including: the Oncology Infusion Center and the Mental Health and Chemical Dependency Intensive Outpatient Program. (*Id*. ¶¶ 40, 44.)  According to Local 7, the consequences of understaffing these hands-on departments can be life-threatening for patients.  (*Id*. ¶ 40.)  Further, Local 7 alleges that members of the medical staff believe their medical licenses are threatened by working in such understaffed departments.  (*Id*. ¶ 43.)

Local 7 filed this action on October 14, 2021, alleging a breach of the CBAs.

## II. ANALYSIS[1]

### A.    ARBITRABILITY

In its Motion, Kaiser argues that this action should be dismissed, or alternatively stayed, because Local 7 filed this action in contravention of the mandatory arbitration

---

[1] Kaiser requests that the Court take judicial notice of various news articles about healthcare staffing shortages that have been caused in part by the COVID-19 pandemic.  (ECF No. 38 at 7–8; ECF No. 40.)  Taking judicial notice of matters outside the pleadings would not be helpful in the context of resolving this Motion; therefore, Kaiser's request is denied.

provision in the CBAs.  (ECF No. 38 at 10–13.)  Kaiser further contends that the Court is required to dismiss or stay this case pursuant to the Federal Arbitration Act, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  Kaiser also argues that even the question of whether this dispute is arbitrable is itself subject to arbitration, and as a consequence should not be addressed in the first instance by this Court.  (ECF No. 38 at 9–10.)

"[A]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960).  "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit their grievances to arbitration."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *Id.* at 649.  Thus, when there is a dispute involving arbitrability, there is a threshold question about who should have the primary power to decide whether a dispute is arbitrable.  *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017).

1.     Threshold Question: Who Determines Arbitrability

Kaiser argues that nearly every provision of the CBAs is governed by the

Resolution/Grievance Procedure Clause, which states that "[t]he arbitrator shall be authorized to rule upon . . . the question of whether or not the grievance is arbitrable." (ECF No. 38 at 9 (quoting ECF No. 31-4 at 45 (MPU CBA); ECF No. 31-6 at 27 (BHP CBA)).)

But this argument conveniently ignores the fact that Local 7's claim is for breach of the Patient Care Clause of the CBAs, and the Patient Care Clause provides: "[t]he parties expressly agree that any disputes arising under [the Patient Care Article's] provision of the [CBA] shall not be subject to the grievance arbitration procedure outlined in [the Resolution/Grievance Procedure Clause]."  (ECF No. 31-4 at 48 (MPU CBA); ECF No. 31-6 at 30 (BHP CBA).)

As a result, the Court cannot find that the parties "clearly and unmistakably provide" that an arbitrator should determine arbitrability for this dispute.  And this result necessarily obtains because the CBAs unambiguously provide that disputes arising under the Patient Care Clause are *not* subject to the arbitration clause in the Resolution/Grievance Procedure Clause.  *AT&T Techs., Inc.*, 475 U.S. at 649. Therefore, in the absence of clear and unmistakable language to the contrary, the Court finds that arbitrability is an issue for judicial determination.

2.   Arbitrability

"When a collective-bargaining agreement contains an arbitration provision and a dispute arises between the parties to the agreement, a court should send the dispute to arbitration unless it can say with positive assurance that the arbitration provision is not susceptible to an interpretation that covers the dispute."  *Warrior & Gulf,* 363 U.S. at 582–583.

The Resolution/Grievance Procedure Clause of the CBAs provides a grievance

procedure for disputes that arise under the CBAs and provides that "[i]f an agreement cannot be reached through the grievance procedure, the parties may choose to attempt resolution through interest based problem solving and/or arbitration."  (ECF No. 31-4 at 45 (MPU CBA); ECF No. 31-6 at 27 (BHP CBA).)

However, as discussed above, this breach of contract action arises out of the Patient Care Clause of the CBAs, and the parties "expressly agree[d]" that such disputes are not subject to the arbitration clause contained in the Resolution/Grievance Procedure Clause.  (ECF No. 31-4 at 48 (MPU CBA); ECF No. 31-6 at 30 (BHP CBA).) Therefore, based on the clear and plain language of the CBAs, the Court can say with positive assurance that the parties intended the arbitration provision not to cover disputes arising under the Patient Care Clause.  *Warrior & Gulf,* 363 U.S. at 582–583; *see also Johnson Builders, Inc. v. United Bhd. of Carpenters & Joiners, Loc. Union No. 1095, AFL-CIO,* 422 F.2d 137, 140 (10th Cir. 1970) (explaining that "if the parties intended to exclude breaches" of certain portions of their agreement from arbitration, "they could easily have so provided in the collective bargaining agreements").

This is not the first time a district judge of this District Court has spoken on the issue.  In 2003, U.S. District Judge Edward W. Nottingham came to the same conclusion when he faced a very similar dispute between the same parties.  In August of 2002, Local 7 sued Kaiser for breach of contract based on the same language in the Patient Care Clause.  (*United Food & Com. Workers Int'l Union, Loc. No. 7 v. Kaiser Found. Health Plan of Colorado*, Civil Action No. 02-cv-01522-EWN-BNB (D. Colo.), ECF No. 1.)  In that case, Local 7 alleged that when staff vacancies occurred, Kaiser "engaged in the consistent practice of 'spreading' the duties of the staff to cover the

vacancies." (*Id.* at 6.)  Local 7 alleged that this practice of understaffing breached the Patient Care Clause of the CBA because Kaiser failed to provide adequate staffing to ensure quality standards of patient care.  (*Id.*)

As here, Kaiser argued that the dispute was subject to arbitration and could not be adjudicated in federal court.  (Civil Action No. 02-cv-01522-EWN-BNB, ECF No. 10 at 8–9.)  Judge Nottingham disagreed, finding that the Patient Care Clause "plainly provides that disputes under [the Patient Care Clause] are not covered by the arbitration provisions found in [the Resolution/Grievance Procedure Clause]."  (Civil Action No. 02-cv-01522-EWN-BNB, ECF No. 35 at 3.)  The undersigned agrees with Judge Nottingham and comes to the same conclusion here.[2]

Therefore, this portion of the Motion is denied, and the Court finds that Local 7's claim that Kaiser breached the Patient Care Clause of the CBAs is not subject to arbitration, and is properly brought before this Court.  However, nothing in this Order should be read or construed by any party to imply that the Court is of the view that it would be appropriate for it to adjudicate any disputes which arise out of provisions *other* than the Patient Care Clause.

## B.   FAILURE TO STATE A CLAIM

### 1.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-

---

[2] Kaiser cites several cases in support of its position, but none of them are applicable here, because they do not involve contracts that contain the clear language exempting a dispute from arbitration contained in the subject CBA.

pleaded factual allegations and view them in the light most favorable to the plaintiff."

*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling

on such a motion, the dispositive inquiry is "whether the complaint contains 'enough

facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of

pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567

F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 556).

    2.    <u>Analysis</u>

In its Motion, Kaiser argues that this case should be dismissed for two reasons.

First, Kaiser argues that the CBAs require Local 7 to follow an extensive grievance

process before filing this lawsuit, and Local 7 failed to do so.  (ECF No. 38 at 15.)  But

as discussed above, the CBAs specifically exclude disputes brought under the Patient

Care Clause from the extensive grievance process laid out in the Resolution/Grievance

Procedure Clause.  (ECF No. 31-4 at 48 (MPU CBA); ECF No. 31-6 at 30 (BHP CBA).)

Therefore, failing to follow a grievance procedure that does not apply to the claim before

the Court cannot possibly serve as a valid reason to dismiss Local 7's claim.

Second, Kaiser argues that the allegations in the Amended Complaint cannot

state a claim for breach of contract because the CBAs state that management reserves

the sole power "to manage the facilities and to direct the working forces."  (ECF No. 38

at 15.)  The Court is equally unimpressed with Kaiser's second argument.

It is well settled law in Colorado that dismissal of a breach of contract claim requires that the Court be presented with an unambiguous contract, and the plaintiff has failed to state a claim under the terms of such a contract.  *Titan Indem. Co. v. Travelers Prop. Cas. Co. of Am.*, 181 P.3d 303, 307 (Colo. App. 2007) (en banc); *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 915 (Colo. 1996) (en banc).  "In determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used, and reference must be made to all the agreement's provisions." *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990) (en banc).

Given that the Patient Care Clause expressly attempts to define the limits to Kaiser's authority to unilaterally make staffing decisions, the Court cannot on the present record rule that the CBAs provide Kaiser with absolute discretion "to manage the facilities and to direct the working forces."  Kaiser's discretion in making staffing decisions may also be limited by other provisions of the contract, which limitations will surely be more fully explored as this action progresses.

For these reasons this second portion of the Motion is also denied.

### III. CONCLUSION

For the foregoing reasons, Kaiser's Motion to Dismiss or Motion to Stay (ECF No. 38) is DENIED.

Dated this 23rd day of September, 2022.

BY THE COURT:

William J. Martinez
United States District Judge